UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUDGE DOW

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | MAGISTRATE JUDGE MASON |
| | ) | |
| v. | ) | No. 07 CR 521 |
| | ) | |
| | ) | Violations: Title 18, United States |
| PATRIZIA SOLIANI, | ) | Code, Sections 1341, 1343 and 2 |
| OSWALDO AULESTIA-BACH, | ) | |
| ELIO BONFIGLIOLI, | ) | |
| JEROME BENGIS and | ) | |
| MICHAEL ZABRIN | ) | |

FILED

J.N 3-12-08
MAR 1 2 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

The SPECIAL MARCH 2007 GRAND JURY charges:

1.    At all times material to this indictment:

    a.    A market existed for original limited edition fine art prints.  Such prints were prepared from a master impression created by the artist, or under his direct supervision.  The prints were thereafter produced in a quantity determined by the artist, and each print was inspected by the artist to ensure that it was of a quality level consistent with the artist's intentions.  Prints approved by the artist were signed by the artist and each print in the sequence was uniquely labeled with a different number, except for a small number of copies retained by the artist or publisher for his own use.  After production of the predetermined number of prints, the master impression was destroyed so as to ensure that the edition was truly limited.

    b.    Defendant OSWALDO AULESTIA-BACH ("AULESTIA-BACH") was a resident of Spain and a distributor of counterfeit artwork throughout the United States and elsewhere.

c.    Defendant ELIO BONFIGLIOLI ("BONFIGLIOLI") was a resident of Italy and a distributor of counterfeit artwork throughout the United States and elsewhere.

d.    Defendant PATRIZIA SOLIANI ("SOLIANI") was a resident of Italy and Florida and a distributor of artwork and counterfeit artwork throughout the United States.

e.    Defendant JEROME BENGIS ("BENGIS") was a resident of Florida and a principal in Bengis Fine Art, a Florida business which engaged in the sale, distribution, and appraisal of artwork and counterfeit artwork.

f.    Defendant MICHAEL ZABRIN ("ZABRIN") was a resident of Illinois and a principal in Fineartmasters and Zfineartmasters, Illinois businesses which engaged in the sale of purported original limited edition fine arts prints to other art dealers and to consumers.

g.    Art Distributor A was a resident of Spain and a distributor of artwork throughout the United States.

h.    Art Dealer A owned and operated a California art gallery specializing in the sale of fine original prints.

2.    Between approximately July 1999 and October 2007, at Northbrook, in the Northern District of Illinois, Eastern Division, and elsewhere,

OSWALDO AULESTIA-BACH,
ELIO BONFIGLIOLI,
PATRIZIA SOLIANI,
JEROME BENGIS, and
MICHAEL ZABRIN,

2

defendants herein, together with Art Distributor A, Art Dealer A, and others known and unknown, devised and intended to devise, and participated in, a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, in connection with the sale of limited edition fine art prints, which scheme is further described below.

3.     It was part of the scheme that defendants AULESTIA-BACH and BONFIGLIOLI knowingly caused to be manufactured in Spain and Italy counterfeit prints of renowned artists, including, Marc Chagall, Roy Lichtenstein, Joan Miro, Pablo Picasso and Andy Warhol.

4.     It was further part of the scheme that defendant BONFIGLIOLI obtained through defendant SOLIANI special stock paper, used for the authorized publication of Miro prints, for the manufacture of counterfeit Miro prints.

5.     It was further part of the scheme that defendants AULESTIA-BACH and ELIO BONFIGLIOLI acquired what they knew to be counterfeit prints bearing forged signatures of well-known artists, including among others, Marc Chagall, Roy Lichtenstein, Joan Miro, Pablo Picasso and Andy Warhol, in order to distribute and sell them as original limited edition fine art prints. Defendants BONFIGLIOLI and AULESTIA-BACH further knew that many of the prints they had acquired bore false numerical or other markings making them appear as if they had been part of an original limited edition, or had been prepared for the artist's own use.

6.     It was further part of the scheme that defendant AULESTIA-BACH, at times, forged the signatures of certain artists, including Chagall, Lichtenstein, Miro, and Picasso, on the counterfeit prints in order to sell them as original works of the artists.

7.    It was further part of the scheme that defendants AULESTIA-BACH, BONFIGLIOLI, SOLIANI and ZABRIN spoke in code when discussing counterfeit art over the telephone.

8.    It was further part of the scheme that defendant BONFIGLIOLI distributed counterfeit artwork to various art dealers, including co-schemers SOLIANI, ZABRIN and Art Dealer A, who knowingly sold the counterfeit artwork to various wholesale and retail customers.

9.    It was further part of the scheme that Art Dealer A falsely represented to his customers that the prints he was selling were genuine limited edition prints signed and authorized by the artists.

10.    It was further part of the scheme that defendant ZABRIN falsely represented to his customers that the prints he was selling were genuine limited edition prints signed and authorized by the artists.  Defendant ZABRIN used the Internet website eBay, as well as other means, to sell counterfeit prints.

11.    It was further part of the scheme that defendant ZABRIN provided his customers with "certificates of authenticity," which contained what he knew to be false representations about the artist, year of publication and number in the edition.

12.    It was further part of the scheme that defendant AULESTIA-BACH distributed counterfeit artwork to co-schemers SOLIANI and Art Distributor A, who knowingly sold the counterfeit artwork to various art wholesalers and retailers in Florida, New York and Illinois.

13.    It was further part of the scheme that, in some instances, AULESTIA-BACH and

4

BONFIGLIOLI provided art to SOLIANI on consignment. After SOLIANI sold the counterfeit art, she paid AULESTIA-BACH and BONFIGLIOLI in cash.

14.    It was further part of the scheme that to avoid arousing suspicion, defendants AULESTIA-BACH and BONFIGLIOLI advised SOLIANI to limit the amount of counterfeit art placed in the market at one time.

15.    It was further part of the scheme that defendant SOLIANI distributed counterfeit prints to co-schemer BENGIS and Art Dealer B knowing that the prints would be offered and sold to customers of defendant BENGIS and Art Dealer B as genuine limited edition prints.

16.    It was further part of the scheme that, in some instances, defendant SOLIANI provided counterfeit art to defendant BENGIS on consignment. After defendant BENGIS sold the counterfeit art, he paid defendant SOLIANI.

17.    It was further part of the scheme that defendant BENGIS distributed counterfeit prints to defendant ZABRIN in Illinois and to other art dealers located in, among other places, Indiana, New York, Virginia and Australia, who knowingly sold the counterfeit artwork to various wholesalers and retailers.

18.    It was further part of the scheme that defendant BENGIS falsely represented to retail customers that the prints he was selling were genuine limited edition prints.

19.    It was further part of the scheme that defendant BENGIS knowingly provided Wholesalers A and B false appraisals for counterfeit artwork.

20.    It was further part of the scheme that defendants SOLIANI, BENGIS, ZABRIN and

Art Dealer A resold the counterfeit artwork obtained directly or indirectly from AULESTIA-BACH and BONFIGLIOLI at prices substantially in excess of the market value for inauthentic prints.

21.    It was further part of the scheme that defendant BONFIGLIOLI maintained a bank account at the Bank of America in San Francisco into which he received in excess of $587,000 in proceeds from the distribution of counterfeit prints to defendant ZABRIN, Art Dealer A and others.

22.    It was further part of the scheme that defendant AULESTIA-BACH maintained bank accounts at the Bank of America in San Francisco into which he received in excess of $123,000 in proceeds from the distribution of counterfeit prints to BONFIGLIOLI and Art Distributor A.

23.    It was further part of the scheme that defendant SOLIANI maintained bank accounts in Florida into which she received in excess of $426,000 in proceeds from the distribution of counterfeit prints to defendant BENGIS and Art Dealer B.

24.    It was further part of the scheme that defendant BENGIS received payments in excess of $51,000 for the sale of prints, including counterfeit prints to Wholesaler A.

25.    It was further part of the scheme that defendant BENGIS received in excess of $23,000 for appraisals performed in 2003 for prints, including counterfeit prints sold to Wholesaler A.

26.    It was further part of the scheme that defendant ZABRIN received in excess of $765,000 for the sale of counterfeit art sold to consumers.

6

27.    It was further part of the scheme that Art Distributor A received in excess of $2 million from Wholesaler A for the sale of prints, including counterfeit Picasso and Miro prints.

28.    It was further part of the scheme that on or about July 12, 2005, defendant ZABRIN sold three counterfeit Roy Lichtenstein prints, namely, prints entitled "Explosion," "Still Life with Picasso" and "Huh?" to Purchaser A for $10,000.

29.    It was further part of the scheme that on or about July 13, 2005, defendant ZABRIN wired and caused to be wired $5,000 from a bank account in the name of ZABRIN's daughter in Northbrook, Illinois to the Bank of America account of defendant BONFIGLIOLI in San Francisco, California as payment for counterfeit prints.

30.    It was further part of the scheme that on or about July 25, 2005, defendant ZABRIN knowingly shipped two counterfeit Roy Lichtenstein prints, "Explosion" and "Still Life with Picasso" to Purchaser A in London, England.

31.    It was further part of the scheme that on or about September 22, 2005, Art Dealer A caused to be wired $7,000 from a J.P. Morgan/Chase checking account in the name of ZFineartmasters to the Bank of America account of defendant BONFIGLIOLI in San Francisco as payment for counterfeit prints.

32.    It was further part of the scheme that on or about September 23, 2005, defendant BONFIGLIOLI caused a shipping tube purportedly containing "posters," but, in fact, contained counterfeit limited edition prints of Roy Lichtenstein's "Huh" and "Samuel Guggenheim Poster," to be mailed from Italy to ZABRIN in Northbrook, Illinois.

33.    It was further part of the scheme that on or about September 25, 2005, defendant ZABRIN caused to be shipped via Federal Express from Northbrook, Illinois to Purchaser A in London, England, a shipping tube containing a counterfeit Roy Lichtenstein limited edition print entitled "Huh?"

34.    It was further part of the scheme that on or about October 3, 2005, defendant ZABRIN electronically offered for sale on eBay two etchings for which he posted the following false and fraudulent representations: that the prints were signed in pencil; that the prints were each numbered from an edition of only 50; and that the prints were 1968 Pablo Picasso etchings from the 347 Series, Bloch #1538 and Bloch #1734, respectively.

35.    It was further part of the scheme that defendant ZABRIN knowingly provided Purchaser A with false certificates of authenticity for Bloch #1538 and Bloch #1734, which certificates falsely represented that the artist was Pablo Picasso, the prints were from a limited edition of 50, the prints were signed by the artist, and the prints were created in 1968.

36.    It was further part of the scheme that in or about November 2006, defendant BENGIS sold to defendant ZABRIN four counterfeit Marc Chagall lithographs entitled "Day Break," "Village With A Red Donkey," "Artist With A Goat," and "Every Day World", for approximately $21,000, knowing and intending that ZABRIN would sell and attempt to sell the counterfeit prints as genuine.

8

37.    It was further part of the scheme that on or about November 7, 2006, defendant SOLIANI shipped to defendant BENGIS a package containing, among other things, counterfeit Chagall prints.

38.    It was further part of the scheme that in or about November 2006, defendant BENGIS shipped and caused to be shipped to defendant ZABRIN by Federal Express the four counterfeit Chagall prints which defendant BENGIS had received from defendant SOLIANI.

39.    It was further part of the scheme that defendant ZABRIN sold the four counterfeit Chagall pieces purchased from defendant BENGIS to Art Gallery A in Chicago, Illinois for approximately $29,000.

40.    It was further part of the scheme that the defendants and their co-schemers sold thousands of counterfeit prints to victims throughout the United States, Canada, Australia and Europe during the course of the scheme, and received in excess of $4 million for the counterfeit prints.

41.    It was further part of the scheme that defendants BONFIGLIOLI, AULESTIA-BACH, SOLIANI, BENGIS, ZABRIN and their co-schemers misrepresented, concealed and hid, and caused to be misrepresented, concealed and hidden, the purposes of and acts done in furtherance of the aforementioned scheme.

42.    On or about July 15, 2005, at Northbrook, in the Northern District of Illinois, and elsewhere,

OSWALDO AULESTIA-BACH,
ELIO BONFIGLIOLI, and
MICHAEL ZABRIN,

defendants herein, for the purpose of executing the aforesaid scheme, knowingly caused to be transmitted in interstate commerce between Northbrook, Illinois and London, England, certain signs and signals, namely, a wire transfer in the amount of $10,000 for the purchase of prints, from the account associated with Purchaser A at Hong Kong Shanghai Bank in London, England to Defendant MICHAEL ZABRIN's bank account in Northbrook, Illinois;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT TWO

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.    Paragraphs 1 through 41 of Count One are realleged and incorporated as though fully set forth herein.

2.    On or about September 22, 2005, at Northbrook, in the Northern District of Illinois, and elsewhere,

OSWALDO AULESTIA-BACH,
ELIO BONFIGLIOLI, and
MICHAEL ZABRIN,

defendants herein, for the purpose of executing the aforesaid scheme, knowingly caused to be transmitted in interstate commerce between Northbrook, Illinois and San Francisco, California, certain signs and signals, namely, a wire transfer in the amount of $7,000 for the purchase of counterfeit prints, from J.P. Morgan Chase in Northbrook, Illinois to Bank of America, San Francisco, California;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT THREE

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.    Paragraphs 1 through 41 of Count One are realleged and incorporated as though fully set forth herein.

2.    On or about September 23, 2005, at Northbrook, in the Northern District of Illinois, Eastern Division,

OSWALDO AULESTIA-BACH,
ELIO BONFIGLIOLI, and
MICHAEL ZABRIN,

defendants herein, for the purpose of executing the aforesaid scheme, and attempting to do so, did knowingly cause to be delivered by DHL, a commercial interstate carrier, according to the directions thereon, a shipping tube addressed to MICHAEL ZABRIN in Northbrook, Illinois from Italy, which tube contained counterfeit Roy Lichtenstein prints entitled "Huh?" and "Samuel Guggenheim Poster."

In violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT FOUR

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.     Paragraphs 1 through 41 of Count One are realleged and incorporated as though fully set forth herein.

2.     On or about November 11, 2005, at Medinah, in the Northern District of Illinois, and elsewhere,

OSWALDO AULESTIA-BACH,
ELIO BONFIGLIOLI, and
PATRIZIA SOLIANI,

defendants herein, for the purpose of executing the aforesaid scheme, knowingly caused to be transmitted in interstate commerce between Miami Beach, Florida and Medinah, Illinois, certain writings, signs, signals, and sounds, namely, a facsimile transmission containing an invoice for the sale of assorted counterfeit Joan Miro prints to Art Dealer B;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT FIVE

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.      Paragraphs 1 through 41 of Count One are realleged and incorporated as though fully set forth herein.

2.      On or about November 14, 2005, at Itasca, in the Northern District of Illinois, and elsewhere,

OSWALDO AULESTIA-BACH,
ELIO BONFIGLIOLI, and
PATRIZIA SOLIANI,

defendants herein, along with Art Dealer B, for the purpose of executing the aforesaid scheme, knowingly caused to be transmitted in interstate commerce from Illinois to Florida, certain signs and signals, namely, a wire transfer in the amount of $22,500 for the purchase of prints, from an account belonging to Art Dealer B's business at Itasca Bank & Trust in Itasca, Illinois to an account belonging to PATRIZIA SOLIANI at Citibank, Miami Beach, Florida;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT SIX

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.     Paragraphs 1 through 41 of Count One are realleged and incorporated as though fully set forth herein.

2.     On or about January 6, 2006, at Northbrook, in the Northern District of Illinois, and elsewhere,

OSWALDO AULESTIA-BACH,
ELIO BONFIGLIOLI, and
MICHAEL ZABRIN,

defendants herein, for the purpose of executing the aforesaid scheme, knowingly caused to be transmitted in interstate commerce from Illinois to California, certain signs and signals, namely, a wire transfer in the amount of $5,000 as payment for counterfeit prints, sent from an account belonging to MICHAEL ZABRIN at J.P. Morgan Chase in Northbrook, Illinois to an account belonging to ELIO BONFIGLIOLI at Bank of America, San Francisco, California;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT SEVEN

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.      Paragraphs 1 through 41 of Count One are realleged and incorporated as though fully set forth herein.

2.      On or about January 17, 2006, at Northbrook, in the Northern District of Illinois, Eastern Division, and elsewhere,

OSWALDO AULESTIA-BACH,
ELIO BONFIGLIOLI, and
MICHAEL ZABRIN,

defendants herein, for the purpose of executing the aforesaid scheme, and attempting to do so, did knowingly cause to be delivered by DHL, a commercial interstate carrier, according to the directions thereon, a shipping tube addressed to MICHAEL ZABRIN in Northbrook, Illinois from Italy, which tube contained four counterfeit Pablo Picasso prints;

In violation of Title 18, United States Code, Sections 1341 and 2.

16

## COUNT EIGHT

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.      Paragraphs 1 through 41 of Count One are realleged and incorporated as though fully set forth herein.

2.      On or about November 21, 2006, at Northbrook, in the Northern District of Illinois, Eastern Division, and elsewhere,

OSWALDO AULESTIA-BACH,
ELIO BONFIGLIOLI,
PATRIZIA SOLIANI, and
JEROME BENGIS,

defendants herein, for the purpose of executing the aforesaid scheme, and attempting to do so, did knowingly cause to be delivered by Federal Express, a commercial interstate carrier, according to the directions thereon, a shipping tube sent from JEROME BENGIS in Coral Springs, Florida to MICHAEL ZABRIN in Northbrook, Illinois, which tube contained one counterfeit Marc Chagall print entitled "Every Day World;"

In violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT NINE

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.    Paragraphs 1 through 41 of Count One are realleged and incorporated as though fully set forth herein.

2.    On or about December 6, 2006, at Northbrook, in the Northern District of Illinois, Eastern Division, and elsewhere,

OSWALDO AULESTIA-BACH,
ELIO BONFIGLIOLI,
PATRIZIA SOLIANI, and
JEROME BENGIS,

defendants herein, for the purpose of executing the aforesaid scheme, and attempting to do so, did knowingly cause to be delivered by Federal Express, a commercial interstate carrier, according to the directions thereon, a shipping tube sent from JEROME BENGIS in Coral Springs, Florida to MICHAEL ZABRIN in Northbrook, Illinois, which tube contained one counterfeit Marc Chagall print entitled "Nude With Little Bouquet;"

In violation of Title 18, United States Code, Sections 1341 and 2.

18

## COUNT TEN

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.    Paragraphs 1 through 41 of Count One are realleged and incorporated as though fully set forth herein.

2.    On or about January 30, 2006, at Northbrook, in the Northern District of Illinois, Eastern Division, and elsewhere,

OSWALDO AULESTIA-BACH,
ELIO BONFIGLIOLI, and
MICHAEL ZABRIN,

defendants herein, for the purpose of executing the aforesaid scheme, and attempting to do so, did knowingly cause to be delivered by the United States Postal Service, according to the directions thereon, an envelope addressed to Purchaser B in Milwaukee, WI from MICHAEL ZABRIN in Northbrook, Illinois which envelope contained two counterfeit certificates of authenticity for Bloch #1588 and Bloch #1734 signed by MICHAEL ZABRIN;

In violation of Title 18, United States Code, Sections 1341 and 2.

19

## FORFEITURE ALLEGATION

The SPECIAL MARCH 2007 further charges:

1.      The allegations contained in Counts One through Ten of this Indictment are realleged and incorporated herein by reference for the purpose of alleging that certain property is subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.      As a result of their violations of Title 18, United States Code, Sections 1341 and 1343, as alleged in the foregoing Indictment,

PATRIZIA SOLIANI
OSWALDO AULESTIA-BACH
ELIO BONFIGLIOLI
JEROME BENGIS, and
MICHAEL ZABRIN,

defendants herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section, 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all right, title and interest in property, real and personal, which constitutes and is derived from proceeds traceable to the charged offenses.

3.     The interests of the defendants subject to forfeiture pursuant to Title 18, United States Code, Section, 981(a)(1)(C) and Title 28, United States Code, Section 2461(c) include, but are not limited to:

(a)     $4 million;

(b)     $123,553.71 seized from the Bank of America account belonging to Aulestia-Bach; and

(c)     $5,056.51 seized from the Bank of America account belonging to Bonfiglioli

4.     If any of the property subject to forfeiture and described above, as a result of any act or omission of the defendants:

(a)     Cannot be located upon the exercise of due diligence;

(b)     Has been transferred or sold to, or deposited with, a third party;

(c)     Has been placed beyond the jurisdiction of the Court;

(d)     Has been substantially diminished in value; or

(e)     Has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property, under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

21

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

_____
FOREPERSON

_____
UNITED STATES ATTORNEY